UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY HUSTED, CHAPTER 7 BANKRUPTCY TRUSTEE OF THE BANKRUPTCY ESTATE OF FIRST CAPITAL RETAIL LLC,<br><br>Plaintiff,<br><br>v.<br><br>FIRST CAPITAL REAL ESTATE INVESTMENTS LLC, a California Limited Liability Company; SUNEET SINGAL; FIRST CAPITAL MANAGEMENT LLC, a Nevada Limited Liability Company,<br><br>Defendants. | No. 2:19-cv-01854-JAM-AC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This matter is before the Court on Defendants Suneet Singal ("Singal"), First Capital Real Estate Investments LLC ("FCREI"), and First Capital Management LLC's ("First Capital Management") (collectively, "Defendants") Motion to Dismiss for failure to state a claim upon which relief can be granted. Mot., ECF No. 19. Kimberly Husted ("Plaintiff") filed an opposition to Defendants' motion, Opp'n, ECF No. 21, to which Defendants replied, Reply, ECF No. 27. After consideration of the parties'

1

briefing on the motion and relevant legal authority, the Court GRANTS Defendants' Motion to Dismiss.[1]

## I. BACKGROUND

On September 13, 2019, Plaintiff, the Chapter 7 Bankruptcy Trustee of the Bankruptcy Estate of First Capital Retail LLC ("FCR"), filed suit against Defendants. See Compl., ECF No. 1. Plaintiff alleged Defendants violated the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), U.S.C. § 1962, engaged in conversion under California law, and committed federal criminal bank fraud, 18 U.S.C. § 1344. Id. The parties have since stipulated that the claim of bank fraud be dismissed with prejudice. See Stipulation to Dismiss Count III, ECF No. 25. The remaining allegations stem from a series of factoring agreements and loans that closely followed the sale of Singal's business, First Capital Retail ("FCR"), to Rameshwar Prasad ("Prasad") on February 23, 2017. Compl. ¶ 20.

Prior to the sale, FCREI wholly owned FCR, a California limited liability company. Id. at ¶¶ 5, 19. Singal served as FCREI's sole owner and member. Id. at ¶¶ 6, 19. Upon entering into a Membership Interest Purchase Agreement, Prasad acquired FCREI's one-hundred percent ownership interest in FCR. Id. at ¶ 20. After the sale, and without the knowledge or consent of FCR, Singal allegedly entered into six different loan agreements on behalf of FCR or FCREI, to be repaid from FCR's future

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 25, 2020.

2

proceeds. Id. at ¶ 21. Singal did so by representing that he was still the manager of FCR. Id. The agreements provided for repayment of the loans by taking a percentage of FCR's retail sale proceeds from its regular bank deposits. Id.

Singal entered into the first of the agreements on April 4, 2017, approximately a month and a half after Prasad acquired FCR. Id. at ¶ 23. Singal signed a Payment Rights Purchase and Sale Agreement with ESBF California, LLC ("ESBF"), wherein ESBF agreed to pay FCR $200,000 in return for the right to recover $248,000 from FCR. Id. Shortly thereafter, on April 18, 2017, Singal entered into a Revenue Based Factoring Agreement with World Global Financing, Inc. ("WGF"), wherein WGF agreed to pay $150,000 for the right to recover twenty-five percent of FCR's future receipts up to $210,000. Id. at ¶ 28. The next day, Singal entered into an agreement with Happy Rock Merchant Solutions ("Happy Rock"), wherein Happy Rock paid $294,946 in exchange for the right to receive $512,000 from FCR's future receivables. Id. at ¶ 45.

The following month, on May 4, 2017, Singal entered into a Merchant Agreement with Global Merchant Cash, Inc. ("GMC"), wherein GMC paid $100,000 for the right to receive ten percent of FCREI's future receipts up to $149,900. Id. at ¶ 31. Although this agreement was entered into on behalf of FCREI, Singal allegedly pledged FCR's assets as additional collateral in the Security Agreement and Guaranty that accompanied it. Id. Then, on May 16, 2017, Singal entered into a Secured Merchant Agreement with Yellowstone Capital West LLC ("YCW"), wherein YCW paid $100,000 for the right to receive fifteen percent of FCR

and FCREI's proceeds up to $149,900. Id. at ¶ 35. The next day, Singal entered into a second Merchant Agreement with GMC, wherein GMC paid $50,000 in exchange for the right to receive ten percent of FCR's proceeds until GMC recovered $74,950. Id. at ¶ 39.

Singal entered into the last of the agreements on June 9, 2017. Id. at ¶ 42. Singal signed a Loan Agreement with YCW, wherein YCW paid $250,000 in exchange for the right to recover $5,999 each business day from FCR's Merchant Account up to $374,750. Id. at ¶ 42. Over the course of the next few months, judgments were entered against FCR for default of payment on these agreements and merchant payments to FCR were withheld. Id. at ¶¶ 48-53. In the end, the lenders' collection of these sums crippled FCR financially and it filed for Chapter 11 bankruptcy on September 14, 2017. Id. at ¶ 58. FCR later converted its bankruptcy to Chapter 7 liquidation and the business was sold for $1.2 million. Id. at ¶ 60.

## II. OPINION

### A. Requests for Judicial Notice

Plaintiff request that the Court take judicial notice of the complaint in S.E.C. v. Singal, et al., Case No. 1:19-cv-11452 (S.D.N.Y. 2019). Request for Judicial Notice ("RJN"), ECF No. 22. But Plaintiff failed to attach a copy of the referenced complaint. See Ex. A to RJN. Instead, Plaintiff attached a copy of the complaint in Heartland Bank v. First Capital Victoria, LLC, et al., Case No. 4:17-cv-549 (E.D. Ark. 2017). Plaintiff request for judicial notice is, therefore, denied.

B.  Legal Standard

A Rule 12(b)(6) motion attacks the complaint as not alleging sufficient facts to state a claim for relief.  "To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relied that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (internal quotation marks and citation omitted).  While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Id. at 678.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

C.  Analysis

1.  Count I: RICO

Plaintiff brings her first claim against Defendants under RICO, U.S.C. § 1962(c).  Compl. ¶¶ 61-79.  Under Section 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  To state a civil claim for a RICO violation, a plaintiff must show: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business

or property. Grimmett v. Brown, 75 F.3d 506 (9th Cir. 1996) (internal quotation marks and citations omitted). Defendants move to dismiss this claim for two reasons, arguing: (1) Plaintiff failed to adequately plead an enterprise; and (2) Plaintiff does not adequately allege a pattern of predicate acts. Mot. at 3-12.

                    a.    Enterprise

Section 1962(c) requires Plaintiff to allege two distinct entities: a "person" and an "enterprise." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161, 166 (2001). Liability "depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." Id. at 163 (internal quotation marks and citation omitted). An enterprise that is not a legal entity, such as a corporation, is commonly known as an "association-in-fact" enterprise. Ellis v. J.P. Morgan Chase & Co., No. 12-cv-038979-YRG, WL 78190, at *3 (N.D. Cal 2015) (citation omitted). An association-in-fact enterprise is "any union or group of individuals" "associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 580, 583 (1981). To show an association-in-fact enterprise, Plaintiff must allege facts establishing three elements: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit. Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (citing Turkette, 452 U.S. at 583).

6

Plaintiff alleges Defendants were involved in an association-in-fact enterprise. See Compl. ¶¶ 65-66. But Defendants argue "Plaintiff fails to allege any facts that would show the existence of an enterprise as opposed to simply a person alleged to have committed fraud." Mot. at 7. The Court agrees. Singal is the only individual alleged to have participated in the conduct. See Compl. ¶¶ 21-46. As far as FCREI is concerned, Singal is alleged to have pledged FCREI's receivables to a lender along with FCR's on two occasions. Id. at ¶¶ 31, 35. And FCREI is alleged to have received some of the funds from the pledge made by Singal of FCR's and FCREI's receivables. Id. at ¶ 45. However, Singal was FCREI's sole owner and member. Id. at ¶¶ 6, 19. No facts suggest FCREI acted in a capacity separate and distinct from Singal.

Singal's relationship to FCREI is distinguishable from the defendant's relationship to the corporation in Cedric Kushner Promotions, 533 U.S. 158. There, defendant was the president and sole shareholder of a closely held corporation that promoted boxing matches, Don King Productions. Id. at 160; Cedric Kushner Promotions, Ltd. v. King, Case No. 98-cv-6859, WL 771366 (S.D.N.Y 1999). The Supreme Court accepted the above-described "distinctness" principle, but, nonetheless, held defendant was sufficiently distinct from the corporation such that the § 1962(c) requirement was met. Cedric Kushner Promotions, 533 U.S. at 163. Defendant was a "natural person" and the corporation, Don King Productions, was "a legally different entity with different rights and responsibilities due to its different legal status." Id. The distinction turns on the fact

that Don King Productions was a separate corporation in the business of promoting boxing matches. Id. at 160. By contrast, FCREI is a limited liability company and Singal is its sole member. Compl. at ¶ 5-6. Unlike the defendant in Cedric Kushner Promotions and Don King Productions, Singal and FCREI are one and the same. There are no other members of FCREI and FCREI has no interests or affairs separate and apart from Singal's. As such, § 1962(c) distinctness requirement is not met here.

No substantive allegations are also asserted against First Capital Management. First Capital Management is merely mentioned as one of the entities controlled by Singal. Compl. at ¶ 66. Thus, the complaint alleges no facts of a formal or informal organization in which individuals function as a continuous unit. As stated above, Plaintiff must allege two distinct entities—a person and an enterprise. Cedric Kushner Promotions, 533 U.S. at 166. Singal is the person, but there is no enterprise distinct from him. Singal was the sole member of FCREI. The few actions taken by FCREI were, in effect, taken by Singal. And there are no facts alleging First Capital Management was substantively involved in any way. Singal, and Singal alone, entered into the agreements on behalf of FCR. Thus, Defendants did not act on behalf of an enterprise. Instead, Singal "conducted . . . [his] own affairs." Id. at 163(internal quotation marks and citation omitted).

Notwithstanding the fact that Federal Rule of Civil Procedure 9(b)'s particularity requirement applies, see Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004), the

Court finds that Plaintiff has failed to offer sufficient factual allegations in support of her contention that Defendants associated together to form an association-in-fact enterprise under the pleading standard of Federal Rule of Civil Procedure 8. Plaintiff has offered no factual allegations to render plausible her claim that anyone beyond Singal was involved. In alleging an enterprise, Plaintiff only offers the Court a series of conclusory allegations. See Compl. ¶ 65-66.

Thus, having construed Plaintiff's allegations in the light most favorable to her, the Court finds that Plaintiff fails to sufficiently allege the existence of an association-in-fact enterprise.

### b. Pattern of Predicate Acts

Because the Court finds that Plaintiff has failed to allege an association-in-fact enterprise, it follows that Plaintiff has also failed to allege a pattern of predicate acts. Without an association-in-fact enterprise, Plaintiff cannot, as a logical matter, be found to have alleged a pattern of racketeering activity. One cannot stand without the other. See Ellis v. J.P.Morgan Chase & Co., Case No. 12-cv-03897-YGR, WL 78190 (N.D. Cal. 2015) (where the court found plaintiffs failed to allege a common purpose, and, thus, no association-in-fact enterprise, plaintiff could not be found to have alleged distinct enterprise conduct).

Accordingly, the Court dismisses Plaintiff's RICO claim.

### 2. Count II: Conversion

Plaintiff's second claim alleges Defendants committed acts of conversion under California law. Compl. ¶¶ 80-85. Under 28

U.S.C. § 1367(c)(3), the Court may "decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." Amistad Christian Church v. Life is Beautiful, LLC, 692 Fed. Appx. 922, 923. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims. Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

With the RICO claim dismissed, only Plaintiff's conversion claim remains. Considering the values of "economy, convenience, fairness, and comity," the Court deems it appropriate to decline jurisdiction over Plaintiff's state law claim. See id. at 1001. The Court has dismissed all claims over which it had original jurisdiction, so Plaintiff's claim may be more appropriately addressed in state court. 28 U.S.C. § 1367(c)(3).

D. Leave to Amend

The Court need not grant leave to amend where amendment would be futile. Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049 (9th Cir. 2006). As explained above, an association-in-fact enterprise does not exist here. Thus, no amendment could salvage the RICO claim and the Court declines to

///
///
///
///

10

exercise supplemental jurisdiction over the conversion claim. Accordingly, dismissal with prejudice is appropriate.

## III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss with prejudice. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: March 26, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE